UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**DONELLY SMITH,**

    **Plaintiff,**

    v.          Case No. 08-C-530

**SPENCER SIARNICKI AND
MIKE GOLLINGER,**

    **Defendants.**

## DECISION AND ORDER GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

  Proceeding pro se, Donelly Smith ("Smith") seeks compensatory punitive damages as well as injunctive relief as a result of the defendants having allegedly deprived him of liberty without due process of law. (Docket No. 1.) On April 24, 2009, the defendants moved for summary judgment. (Docket No. 50.) Smith has responded, (Docket No. 57), and the defendants have replied, (Docket No. 59). The pleadings on the defendants' motion are closed and the matter is ready for resolution. The parties have consented to the exercise of jurisdiction by a magistrate judge.

**FACTS**

  Defendant Spencer Siarnicki ("Siarnicki") is a Probation and Parole Agent for the State of Wisconsin Department of Corrections ("DOC") and at times relevant to this litigation was the agent assigned to supervise Smith. (Def. Prop. Find. of Fact, Docket No. 52 at ¶¶2-3.) Defendant Michael Gollinger ("Gollinger") was Siarnicki's supervisor. (Docket No. 52 at 14.) Smith had been convicted of felony battery and following his term of initial confinement was ordered to attend domestic violence counseling as a condition of his extended supervision. (Docket No. 52 at ¶¶4-7;

Docket No. 55-2 at ¶35.) He was placed in a domestic violence program, initially went to the arranged appointment, but did not complete the program because, he alleged, "I can't afford it." (Docket No. 52 at ¶¶8-9.)

Because Smith did not complete the domestic violence program, he was presented with an Alternative to Revocation ("ATR") form, which he refused to sign. (Docket No. 52 at ¶10; Exhibit 1005, Docket No. 55-5.) However, he did sign a statement wherein he acknowledged that he did not complete the domestic violence program, but contended that he did not do so because he could not afford the program because he was on a fixed income from SSI. (Exhibit 1004, Docket No. 55-4.) ("I can't afford it. That is it.") (It is unclear who wrote Exhibit 1004, because it is in a question and answer format. However, the responses are written from Smith's first-person perspective. Smith did not discuss alternative payment options; rather, he unilaterally decided he could not afford the program, and said that if the state required him to attend treatment, then the state should pay for it. (Docket No. 55-4.) Smith refused to sign an alternative to revocation form (Exhibit 1005), and at the recommendation of Gollinger, Smith was required to serve a 90-day period of incarceration as a sanction for his failure to complete the domestic violence program. (Docket No. 52 at ¶11, ¶16; Exhibit 1006, Docket No 55-6.)

**SUMMARY JUDGMENT STANDARD**

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Material facts are those facts which, under the governing substantive law, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323. The moving party satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

**ANALYSIS**

Smith contends that he was denied due process of law because he did not have a hearing prior to being ordered to serve 90 days in jail. The defendants contend that Smith was not entitled to a hearing under Wisconsin Statute § 302.113(8m) because Smith signed a statement admitting the violation. (Docket No. 51.) Smith responds that he never signed a statement admitting to the allegation. (Docket No. 57.) He contends that he "would never have signed a waiver because a hearing would have exposed the allegation as unfounded." (Docket No. 57 at 3.) However, Smith does acknowledge that he signed Docket No. 55-4. In this document, Smith acknowledges he did not complete the domestic violence program but contends that this was because he could not afford it.

> Wisconsin Statute § 302.113(8m)(b) states:
>
> If a person released to extended supervision under this section signs a statement admitting a violation of a condition or rule of extended supervision, the department may, as a sanction for the violation, confine the person for up to 90 days . . . .

It is undisputed that Smith was required to attend the domestic violence program as a condition of his extended supervision. (See Docket No. 55-2 at ¶3, ¶¶35.) But Smith seems to be of the belief that this statute requires that he must sign a formal ATR form before the DOC may re-incarcerate him. The defendants contend that any signed admission is sufficient. Thus, the defendants' view the issue very narrowly: Smith was ordered to complete a domestic violence program; Smith signed a written statement acknowledging that he did not complete the program; the fact that Smith contends he could not afford the program is irrelevant.

There is nothing in § 302.113(8m)(b) to indicate that the signed admission must take any particular form. Thus, the court finds that Exhibit 1004, (Docket No. 55-4), satisfies the requirements of § 302.113(8m)(b). Accordingly, Smith was not statutorily entitled to a hearing prior to being incarcerated as a sanction for failing to complete the domestic violence program.

However, Smith's claim is broader than merely an argument that he was not provided with the process he believed he was entitled to under Wisconsin law. Smith contends that his constitutional rights were violated because he was incarcerated simply because he was unable to pay certain ordered costs. A person on extended supervision being re-incarcerated for no other reason than his poverty and without any avenue for redress if explaining his poverty would require him to also acknowledge the violation, as might appear to have happened here, would be a matter of concern for this court.

As to this concern, the court notes that Smith was not without redress, both formal and informal, if he believed that he was unable to pay the costs required to complete the ordered program. Exhibit 1004 indicates that Smith could have attempted to informally work out a payment plan. Rather than doing so, Smith unilaterally decided he could not afford the program, thus indicating that it was not an inability but rather a refusal to pay that prevented Smith from completing the program. (Docket No. 55-4) ("Did you discuss a payment plan at the intake? No. Why no? I did not discuss it because I did the math and I could not afford it. . . . I believe that if I

am forced into treatment the state should pay for it because I can't afford it."). Under these circumstances, an individual admittedly refusing to comply with the conditions of extended supervision does not present constitutional concerns for this court.

If a payment plan could not be crafted to meet his financial limitations, Smith had the option to utilize the DOC's Administrative Procedures, see Wis. Admin. Code DOC § 328.11, to challenge his Rules of Community Supervision requiring that he "make every effort to accept the opportunities and counseling offered by supervision, (Docket No. 55-2 at ¶3), and "participate in and complete Anger Management and Domestic Violence treatment," (Docket No. 55-2 at ¶35). Smith chose neither option.

Despite having several options, Smith chose to steadfastly refuse to complete the required program. Since he signed a statement admitting his failure to complete the required program, the defendants were entitled to impose incarceration of 90 days as a sanction for his failure to comply with the Rules of Community Supervision. There are no genuine issues as to material fact and it is clear that the movants are entitled to judgment as a matter of law. Accordingly, the court shall grant the defendants' motion for summary judgment.

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment, (Docket No. 50), is **granted**. The Clerk shall enter judgment dismissing the complaint and this action with prejudice.

Dated at Milwaukee, Wisconsin this <u>6th</u> day of July 2009.

s/AARON E. GOODSTEIN<br>
U.S. Magistrate Judge